IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK08-82245-TJM |
| ) | A08-8060-TJM |
| LINDA D. KLOOS, ) | |
| ) | CH. 7 |
| Debtor(s). ) | |
| LINDA D. KLOOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| U.S. DEPARTMENT OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM

Trial was held in Omaha, Nebraska, on June 22, 2010, regarding the complaint filed herein. Van Schroeder appeared on behalf of Linda D. Kloos and Laurie M. Barrett appeared on behalf of the United States Department of Education. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

BACKGROUND AND FINDINGS OF FACT

The plaintiff, Linda Kloos, a 45-year-old female, sued the United States Department of Education in an attempt to obtain a hardship discharge of a consolidated student loan pursuant to 11 U.S.C. § 523(a)(8). That bankruptcy code section prohibits dischargeability of a student loan "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents . . . "

Ms. Kloos is currently employed by the State of Nebraska and her average monthly take-home pay as of the trial date was $1,657.69. Ms. Kloos' husband, David, sustained an injury in 2007 when he fell two stories off a ladder, severely injuring his back. He is unable to work and in 2009, after this adversary proceeding was filed, he qualified for Social Security and receives a net monthly payment of $817 per month. Their combined monthly income, on average, is $2,474.69. However, they claim monthly expenses in the amount of $2,639.26.

The defendant disputes the assertion that the monthly expenses are anywhere close to $2,639.26. The defendant suggests, after analyzing and minimizing certain claimed expenses, that the monthly expenses cannot, at this time, be more than $2,068.81, leaving $418.44 surplus to pay on the student loan. In addition, the defendant suggests that a debt to a credit union will be paid off in early 2011 leaving monthly expenses at $1,862.15, or $625.10 surplus to be used for student loan payments.

It is not necessary to make a detailed finding of fact concerning the actual current and future monthly expenses of the debtor and her husband. Whatever their monthly expenses are, the unrebutted testimony by the debtor is that, on a monthly basis, the debtor and her husband come up short. They rely on charity, including a gift of at least $100 a month from their church, regular aid from Eastern Nebraska Community Action, and upon a food pantry for food handouts, including

one during the week of trial. I find as a fact that the monthly expenses exceed the monthly income.

Ms. Kloos obtained a bachelor of arts degree in 1986 and a master's degree in religious education in 1996. Other than for a very short period of time, she has been unable to find work in her field and, as mentioned above, is employed by the State of Nebraska in the Department of Vocational Rehabilitation.

The Klooses' monthly expenses did not include entertainment and miscellaneous expenses, but only specific needs including rent, utilities, automobile expenses, handicap equipment, medical bill servicing, clothing and groceries. They do not own real estate. They have two vehicles, a 2003 Chevrolet Malibu and a 1991 Ford pickup truck. The debt on the vehicles is approximately equal to the value of the vehicles.

Both the debtor and her husband have medical issues and incur medical expenses on a regular basis. Ms. Kloos has been hospitalized for depression which sometimes affects her ability to work. She also has arthritis in her knee joints, has undergone surgery in one knee, and is anticipating similar surgery on the opposite knee in 2010. Ms. Kloos has hypertension and is morbidly obese. The hypertension causes her to suffer headaches and has affected her ability to work.

David Kloos recently underwent a quintuple coronary bypass operation, and, at the time of trial, was undergoing cardiac rehabilitation therapy. He is expecting spinal surgery in the future for injuries sustained when he fell from the ladder. He has received a bill for the bypass surgery in the approximate amount of $83,000. Although he has health insurance coverage through Ms. Kloos' employment, and Medicare, the bill is still outstanding because of some dispute between the Medicare organization and Blue Cross/Blue Shield. He testified it was his understanding that he would be responsible for at least 20% of the bill, but this testimony is hotly disputed by the defendant.

The student loan in question is a consolidation of two student loans. The consolidation loan was obtained from the William D. Ford Federal Direct Loan Program. When the note was incurred on August 5, 2000, the total principal amount was $46,894.24.

Filing #109 is an affidavit presented by the defendant in an attempt to explain the history of the loan, the types of repayment plans available, and the monthly amount of payment that Ms. Kloos would qualify for. The document appears to be internally inconsistent, but the information it provides supports the position of Ms. Kloos with regard to her inability to pay this debt.

First, the affidavit, which was signed on June 21, 2010, asserts, at paragraph 18, that "As of 06/22/2010, the projected amount Plaintiff owes to the Department of Education will be $84,799.06, of which $63,117.07 is the unpaid Principal and $20,640.09 is the unpaid Interest." There is no explanation of how a principal amount of the loan of $46,894.24 on August 5, 2000, changed to become $63,117.07 on 06/22/2010. The interest rate is 8.25%. Interest on $63,117.07 is approximately $5,207 annually, or $433.92 a month. If the Department of Education gets interest on interest, 8.25% per year on $84,799 is $6,995. On a monthly basis, that is $582.99.

To show the internal inconsistency, one only needs to look at paragraph 15 of the affidavit. It says the current loan balance is $77,000. Interest only on $77,000 at 8.25% is $6,352, or $529.37 a month.

Paragraph 15 also shows the various repayment plans available to the debtor, with the

income contingent plan available at $173.83 a month for 25 years. Then, the affidavit, apparently using some formula contained in the Department of Education regulations, shows "Income-Based Calculator Results" using adjusted gross income of $25,000 per year, estimated student loan of $77,000 and interest rate of 8.25%. It then says, "According to the information you provided, it appears that you are eligible for the Income-Based Repayment Plan with a monthly payment amount of approximately $40." This amount would be payable for 25 years.

After the 25 years of payments of either $173 a month or $40 a month, the unpaid balance will be forgiven.

The post-trial brief submitted by the defendant at Filing #114 states at paragraph 23, "Plaintiff is seeking to discharge total debt in the amount of $93,120.14. Of that debt, her student loan debt listed in her schedules owed to the U.S. Department of Education totals $90,712.82 . . . ." There is no explanation of how the debt went from almost $85,000 in June 2010 to more than $90,000 a month later. The new amount would accrue interest at $623.65 per month if the defendant gets interest on interest.

Even considering the best case for the position of the Department that the debtor has or will have more than $600 a month available to pay on the student loan, if the debtor paid that full amount for 25 years, the total principal would not be reduced at all and the total debt would have increased significantly. On the other hand, if, as the loan program provides, the debtor paid only $173 a month, or as little as $40 a month, the debt would increase significantly every single month for 25 years.

## CONCLUSIONS OF LAW AND DISCUSSION

Student loans are not dischargeable in bankruptcy unless excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8); Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds), 425 F.3d 526 (8th Cir. 2005). Plaintiff bears the burden to prove that her expenses exceed her income, and that even nominal payments toward her student loan debt present an undue hardship. Cumberworth v. U.S. Department of Education (In re Cumberworth), 347 B.R. 652 (B.A.P. 8th Cir. 2006). The Court should consider the plaintiff's financial circumstances at the time of trial. Walker v. Sallie Mae Serv. Corp. (In re Walker), 427 B.R. 471, 482 (B.A.P. 8th Cir. 2010).

The plaintiff did her best to meet her burden of showing her expenses versus her income. The defendant attempts to show that her presentation of her expenses is incomplete and erroneous. As mentioned above, there are no detailed findings of fact concerning the amount of the expenses because it is clear the monthly expenses exceed the monthly income. Nobody whose monthly expenses exceed monthly income by several hundred dollars is, or wants to be, relying upon charity from the church, from governmental entities, or from food pantries.

The test for undue hardship is the totality of the circumstances, with particular attention to the debtor's current and future financial resources, necessary and reasonable living expenses for the debtor and the debtor's dependents, and other facts unique to the bankruptcy case. Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson), 571 F.3d 775, 779 (8th Cir. 2009); Long v. Educational Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003) (citing Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)). As the Eighth Circuit expressed in Long, "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged." 322 F.3d at 554-55.

The availability of the Income Contingent Repayment Program ("ICRP") is a factor to consider in evaluating the totality of the debtor's circumstances, Jesperson, 571 F.3d at 781, but not every debtor will benefit from participation in that program. Brooks v. Educ. Credit Mgmt. Corp. (In re Brooks), 406 B.R. 382, 394-95 (Bankr. D. Minn. 2009). For a debtor with little surplus income, a large student loan debt, reasonable expenses, and little likelihood of greater income in the future, the ICRP offers no advantage because the debtor will never be able to make headway against the debt and may face a significant tax burden when the debt is forgiven at the end of the term. In granting a student loan discharge, the Brooks court described circumstances similar to those faced by Ms. Kloos:

> Not only would Brooks not retire the debt, she would never make a meaningful payment on her loan obligation. In fact, the debt would simply continue to grow over the twenty-five year period as interest accrues. . . .
> . . . Even if she were able to make the payments dictated by the ICRP, Brooks would never make a dent in her student loan debt. The debt would continue to increase until it was finally discharged, potentially leaving her with an extreme tax liability at age seventy-three.

406 B.R. at 396.

After considering the fact that the debtor's family relies on charity on a monthly basis, that there is no evidence their financial situation will change significantly in the future, that the debtor did participate in the William D. Ford Federal Direct Loan Program Income Contingent Plan and was unable to make the regular payments, and finally, the fact that if the debtor's loan is not discharged, and she is somehow able to make the payments of $40 per month or $173 per month for 25 years, she will then be 70 years old and the debt that will be "forgiven" at that time will far exceed the debt as it is today, there is no logical reason to refuse the discharge of the debt as of this date. To deny discharge of this student loan debt will cause an undue hardship to debtor and her husband.

Therefore, no matter what the amount of the debt is, whether it is $77,000, $84,000, or $90,000, it is discharged. Separate judgment will be entered.

DATED:     August 5, 2010

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
Van Schroeder
Laurie M. Barrett
U.S. Trustee